## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31385-9-III |
| | ) | (consolidated with |
| Respondent, | ) | No. 31398-1-III) |
| | ) | |
| v. | ) | |
| | ) | |
| DANIEL DUANE DODD, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Daniel Dodd appeals his first degree murder and first degree unlawful possession of a firearm convictions involving the death of Kevin Myrick, a witness against Mr. Dodd's girlfriend, Tina Taylor. Mr. Dodd contends the trial court erred in denying testimony suggesting other perpetrators and by improperly commenting on the evidence. In his pro se statement of additional grounds for review, Mr. Dodd contends private conversations between him and his attorney were improperly recorded and evidentiary error. We find no error, and affirm.

### FACTS

Mr. Myrick, a confidential informant for the Walla Walla Police Department, made a controlled buy from Ms. Taylor resulting in drug charges against her. Ms. Taylor was Mr. Dodd's live-in girlfriend. On June 12, 2011, Mr. Myrick was outside, fixing Kristina

Devaney's, car. She was sitting inside the car while he worked under the hood. Ms. Devaney saw a man dressed in black jump up outside the passenger side of the vehicle and rush to the front, heard a noise, and saw Mr. Myrick fall. Ms. Devaney found Mr. Myrick on the ground bleeding and saw the assailant running away. She called 911. Mr. Myrick died at the hospital from a gunshot wound to the face. Experts believed the bullet that killed Mr. Myrick was from either a .38 special or .357 magnum.

Passerby Manuel Ramirez heard a boom-like noise. About 10 seconds later, he saw someone run out of an alley and up the street who had wavy hair and was wearing a black sweater. Mr. Dodd had "longer hair." Report of Proceedings (RP) at 556.

A few weeks before Mr. Myrick's death, his house was fire bombed; Ms. Taylor's son-in-law, Charles Wilson, was suspected. The police believed Ms. Taylor had assisted Mr. Wilson by hiding evidence. Mr. Wilson, however, was in jail when Mr. Myrick was shot and was ruled out as a suspect. On the other hand, Ms. Taylor made several frantic phone calls from jail to Mr. Dodd prior to Mr. Myrick's death. Ms. Taylor was scheduled to plead guilty but changed her mind two days before Mr. Myrick's death. Based on data from nearby cell towers, officers learned Mr. Dodd's cell phone was used close to the shooting site near the time of the murder.

Officers arrested Mr. Dodd to serve work crew time. Officers asked Mr. Dodd about the murder and he claimed he was at home that time. After Mr. Dodd's brief escape from work crew, he unsuccessfully asked to view the investigative report on Mr. Myrick's murder and confess to the killing in exchange for a more lenient sentence for

2

Ms. Taylor. Officers learned that just prior to the shooting, Mr. Dodd borrowed a .357 Smith and Wesson from his roommate and returned it after the shooting. He told his roommate "it is a done deal." RP at 584. The gun was later retrieved in the Snake River.

The State charged Mr. Dodd with first degree murder and first degree unlawful possession of a firearm. Mr. Dodd defended by suggesting some other person committed the murder, either Clifford Fauver or Mr. Wilson. Mr. Fauver allegedly confessed to the murder to one of Mr. Dodd's cellmates, Sheyne Thrall. Instead of longer hair, Mr. Fauver was "just about bald." RP at 696. The State moved to limit the accusation against Mr. Fauver and the court ruled the accusation was inadmissible hearsay and uncorroborated.

During cross-examination of one of the investigating officers, defense counsel questioned whether police knew Mr. Myrick was involved in controlled buys with Mr. Wilson's mother in law to suggest Mr. Wilson's involvement in the shooting. The State objected, arguing because Mr. Wilson was known to be in jail, he could not have shot Mr. Myrick, and therefore, his motive was irrelevant. Defense counsel responded, "I don't think simply because Mr. Wilson himself was in jail and didn't pull the trigger, he could not have been responsible for the homicide." RP at 357. The trial court sustained the State's objection stating, "Well, I think in order to speculate that somebody else did it . . . you have to have some additional tying in or other evidence that would connect that. And unless you have got that, I think the objection is well taken." RP at 357.

3

Later, Defense counsel established through cross-examination of one of the investigating officers that one of Mr. Myrick's undercover buys involved Mr. Wilson's mother and as a result, Mr. Wilson threatened Mr. Myrick. Defense counsel then asked the officer how successful Mr. Myrick had been as a confidential informant. The State objected to the question as irrelevant. Defense counsel noted the question "has to do with the exposure of Mr. Myrick to other individuals, who threatened him." RP at 406. The trial court overruled the objection, but then stated, "But for instance, the question about Charles Wilson threatening Mr. Myrick, there has been testimony establishing that Charles Wilson was in custody in another county at the time of this incident. So whether or not he -- There wasn't an objection made, but whether or not he threatened him seems to me, unless you can tie that in to some other evidence is irrelevant." RP at 406. Defense counsel did not object to the comments nor request that the jury be instructed to disregard them.

A jury found Mr. Dodd guilty as charged. He appealed.

## ANALYSIS

### A. Right to Present a Defense

The issue is whether the trial court erred by abusing its discretion in granting the State's motion in limine, excluding evidence from Mr. Thrall that Mr. Fauver confessed to the murder. Mr. Dodd argues this denied him his right to present a defense.

We review a trial court's ruling on a motion in limine or the admission of evidence to determine whether it was manifestly unreasonable or based on untenable grounds or

4

reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995). We review de novo whether a trial court's evidentiary ruling violated a defendant's Sixth Amendment right to present a defense. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010).

A criminal defendant has the right to present his or her defense, guaranteed by the Sixth Amendment to the federal constitution, as well as article I, section 22 of the Washington Constitution. *Wash. v. Texas*, 388 U.S. 14, 19, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967); *State v. Hudlow*, 99 Wn.2d 1, 14, 659 P.2d 514 (1983). A defendant's Sixth Amendment right to present a meaningful defense, however, is not unlimited and must yield to "established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence." *State v. Finch*, 137 Wn.2d 792, 825, 975 P.2d 967 (1999). A defendant has no constitutional right to present inadmissible evidence. *Hudlow*, 99 Wn.2d at 15.

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." ER 801(c). In general, hearsay is inadmissible. ER 802. However, several exceptions exist. *See* ER 803, 804. Mr. Dodd argues the evidence is admissible under ER 804(b)(3), which provides that a statement against a person's interest is admissible if "a reasonable person in the declarant's position would not have made the statement unless the person believed it to be true." But, "[i]n a criminal case, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."

5

Here, the trial court properly found no corroborating circumstances exist. No link exists between Mr. Fauver and the murder weapon, no history of contention between Mr. Myrick and Mr. Fauver, and Mr. Fauver did not meet Mr. Ramirez's description of the shooter. Moreover, Mr. Fauver denied the confession.

*State v. Strizheus*, 163 Wn. App. 820, 262 P.3d 100 (2011), *review denied*, 173 Wn.2d 1030 (2012) is instructive. There, Anatoliy Strizheus was charged with the attempted murder of his estranged wife. *Id.* at 821. When police arrived, the defendant had wounds he blamed on his wife. *Id.* at 823. At trial, the defendant attempted to blame his adult son, Vladimir, for the assault on his wife, although the son had not been present at the time. *Id.* at 825-26. The trial court found that the evidence did not tend to clearly point to someone other than the defendant as the guilty person. *Id.* at 827. The court of appeals upheld the ruling, noting that a defendant's constitutional right to a defense "is not absolute" and "does not extend to . . . inadmissible evidence." *Id.* at 830.

Here, like in *Strizheus*, the evidence was inadmissible. The trial court correctly concluded likewise.

### B. Alleged Judicial Comment

The issue is whether the trial court denied Mr. Dodd a fair trial by commenting on the evidence. Mr. Dodd contends the court's comments about Mr. Wilson's whereabouts on the night of the murder invaded the province of the jury.

6

A trial judge may not convey his or her personal attitudes or opinion towards the merits of the case. *State v. Levy*, 156 Wn.2d 709, 721, 132 P.3d 1076 (2006). When a judge comments on a fact in dispute, the State must show that no prejudice could have resulted. *Id.* at 723. The test, then, is whether the judge commented on a fact in dispute, and if so, whether the comment was prejudicial. *Id.* A judicial comment on the evidence is an error of constitutional magnitude, and as such, may be raised for the first time on appeal. *Id.* at 719-20; RAP 2.5.

Here, the judge commented "there has been testimony establishing that Charles Wilson was in custody in another county at the time of this incident." RP at 406. Based on this court's record, this was not a disputed fact. Because Mr. Wilson's location at the time of the murder was not in dispute, the judge's statement was not a judicial comment under *Levy*. Moreover, the statement was not prejudicial. The judge did not approve or disapprove of a witness's credibility, but only noted the uncontroverted and agreed evidence. Mr. Wilson was in custody at the time of the offense.

By comparison, in *State v. Bogner*, 62 Wn.2d 247, 249, 382 P.2d 254 (1963), the trial judge commented, "[D]on't you think we are getting a little ridiculous?" when defense counsel was questioning a police officer. Our Supreme Court reversed Mr. Bogner's conviction, holding the comment was prejudicial. *Id.* at 256. Here, because Mr. Wilson's incarceration was not in dispute, it is affirmatively proven that Mr. Dodd could not have been prejudiced by the judge's words. Thus, the judge's statement was

7

not a judicial comment, and even if it was, the comment would not amount to reversible error. Mr. Dodd received a fair trial.

### C. Statement of Additional Grounds

Pro Se, Mr. Dodd contends jail staff improperly recorded his phone conversations with his attorney and the State failed to prove Mr. Dodd was carrying his cell phone on the night of the murder.

Inmates have a lesser privacy expectation while incarcerated. *State v. Modica*, 136 Wn. App. 434, 448, 149 P.3d 446 (2006). Attorney-client communication, however, is considered private. *State v. Clark*, 129 Wn.2d 211, 224, 916 P.2d 384 (1996). And, intrusion into private attorney-client communications violates a defendant's right to effective representation and due process. *State v. Cory*, 62 Wn.2d 371, 374-75, 382 P.2d 1019 (1963). Mr. Dodd points to several places in the record where police note Mr. Dodd spoke to his attorney while incarcerated. This evidence is based on phone logs and not on recorded conversations. Without more, Mr. Dodd fails to show there was an intrusion on his right to private attorney-client conversations.

Mr. Dodd argues while the State provided evidence his cell phone was used near the crime scene, it did not prove he was the person using the phone. The State, however, did not have to prove he used his phone near the murder scene. The State is permitted to submit to the jury circumstantial evidence. Direct and circumstantial evidence are equally reliable. *State v. Delmarter*, 94 Wn.2d 634, 638, 618 P.2d 99 (1980). Furthermore, "'[t]he jury is permitted to infer from one fact[,] the existence of

8

another essential to guilt, if reason and experience support the inference.'" *State v. Jackson*, 112 Wn.2d 867, 875, 774 P.2d 1211 (1989) (quoting *Tot v. United States*, 319 U.S. 463, 467, 63 S. Ct. 1241, 87 L. Ed. 1519 (1943)). Accordingly, it was the province of the jury to decide the weight of the cell phone evidence.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Brown, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Lawrence-Berrey, J.

9